# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 1:15-cv-20040-RNS

JACQUELINE BORJA, *et al.*,

       Plaintiffs,

v.

UBER TECHNOLOGIES, INC. and
LYFT, INC.,

       Defendants.

_____

**DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STAY THE CLAIMS OF PLAINTIFFS BORJA AND LEVITT IN FAVOR OF INDIVIDUAL ARBITRATION AND MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 3

    A.    Uber Users Agree To The Terms And Conditions In The Uber User
        Agreement .................................................................................................. 3

    B.    The User Agreement Requires The Arbitration Of All Disputes On An
        Individual Basis ......................................................................................... 5

    C.    Plaintiffs Borja And Levitt Filed This Action And, In So Doing, Ignored
        Their Agreements To Arbitrate Their Disputes With Uber ....................... 6

III.  THE CLAIMS OF PLAINTIFFS BORJA AND LEVITT SHOULD BE
    DISMISSED OR STAYED IN FAVOR OF ARBITRATION ........................... 7

    A.    The Federal Arbitration Act Applies ........................................................ 8

    B.    Borja's and Levitt's Arbitration Agreements Are Enforceable Here ...... 9

    C.    Borja's And Levitt's Claims All Fall Within The Broad Scope Of The
        Arbitration Agreement ............................................................................. 13

    D.    The Arbitration Provision Mandates Individual, Non-Class Arbitration Of
        Plaintiff Borja's and Levitt's Claims ..................................................... 14

IV.   CONCLUSION .................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*24 Go Wireless, Inc. v. AT&T Mobility II, LLC,*
No. 11-20930-CIV, 2011 WL 2607099 (S.D. Fla. June 30, 2011)..........................................14

*5381 Partners LLC v. Shareasale.com, Inc.,*
No. 12cv426, 2013 WL 5328324 (E.D.N.Y. Sept. 23, 2013)..................................................10

*American Express Co. v. Italian Colors Rest.,*
133 S. Ct. 2304 (2013).....................................................................................................2, 3, 15

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 1740 (2011)...............................................................................................2, 3, 14, 15

*AT&T Tech., Inc. v. Commn's Workers of Am.,*
475 U.S. 643 (1986)...............................................................................................................13

*Bolamos v. Globe Airport Security Servs., Inc.,*
No. 02-211005, 2002 WL 1839210 (S.D. Fla. May 21, 2002) ...................................................7

*Brueggemann v. NCOA Select, Inc.,*
No. 08-80606-CIV, 2009 WL 1873651 (S.D. Fla. June 30, 2009)..........................................11

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006)........................................................................................................7, 8, 12

*Cairo, Inc. v. Crossmedia Servs., Inc.,*
C 04-04825 JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005)..................................................11

*Caley v. Gulfstream Aerospace Corp.,*
428 F.3d 1359 (11th Cir. 2005) ...........................................................................................16

*Chastain v. Robinson–Humphrey Co.,*
957 F.2d 851 (11th Cir. 1992)................................................................................................9

*Crawford v. Beachbody, LLC,*
No. 14CV1583-GPC (KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ............................10

*Cruz v. Cingular Wireless,*
648 F.3d 1205 (11th Cir. 2011) ........................................................................................2, 15

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985)................................................................................................................7

*Dockeray v. Carnival Corp.*,
724 F. Supp. 2d 1216 (S.D. Fla. 2010) ................................................................................. 1

*Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*,
251 F.3d 1316 (11th Cir. 2001) ........................................................................................... 9

*Espinosa v. Rick's Cabaret Int'l, Inc.*,
No. 13–cv–24565, 2014 WL 5454827 (S.D. Fla. April 17, 2014) ...................................... 1

*Fi–Evergreen Woods, LLC v. Robinson*,
135 So. 3d 331, 335 (5th DCA 2013) .................................................................................. 9

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ............................................................................... 11

*Green Tree Fin. Corp.-Alabama v. Randolph*,
531 U.S. 79 (2000) ............................................................................................................... 7

*Gunson v. BMO Harris Bank, N.A.*,
43 F. Supp. 3d 1396, 1399 (S.D.Fla. 2014) (Scola, J.) ................................................. 7, 13

*H.W. Gay Enter., Inc. v. John Hall Elec. Contracting, Inc.*,
792 So.2d 580 (Fla. 4th DCA 2001) .................................................................................... 9

*Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*,
408 F.2d 606 (2d Cir. 1969) .............................................................................................. 12

*In re Managed Care Litig.*,
No. 00-MD-1334, 2003 WL 22410373 (S.D. Fla. Sept. 15, 2003) ................................... 13

*IT Strategies Group, Inc. v. The Allday Consulting Group, L.L.C.*,
975 F. Supp. 2d 1267 (S.D. Fla. 2013) ......................................................................... 11, 12

*Lambert v. Austin Ind.*,
544 F.3d 1192 (11th Cir. 2008) ........................................................................................... 9

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
473 U.S. 614 (1985) ........................................................................................................... 13

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983) ................................................................................................................. 8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ........................................................................................... 10

*Nicosia v. Amazon.com, Inc.*,
No. 14-CV-4513, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) ........................................... 10

*Pendergast v. Sprint Nextel Corp.,*
    691 F.3d 1224 (11th Cir. 2012) ...................................................................................2, 15

*Perera v. H & R Block E. Enter., Inc.,*
    914 F. Supp. 2d 1284 (S.D. Fla. 2012) .............................................................................1

*Picard v. Credit Solutions, Inc.,*
    564 F.3d 1249 (11th Cir. 2009) ........................................................................................8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967).........................................................................................................12

*Rent-A-Center, W., Inc. v. Jackson,*
    561 U.S. 63 (2010)...........................................................................................................12

*Ruby-Collins, Inc. v. City of Huntsville,*
    748 F.2d 573 (11th Cir. 1984) ........................................................................................13

*Salco Distributors, LLC v. iCode, Inc.,*
    No. 8:05 CV 642 T 27TGW, 2006 WL 449156 (M.D. Fla. Feb. 22, 2006) ......................9, 10

*Sanchez v. J.P. Morgan Chase Bank, N.A.,*
    No. 14-20468-CIV, 2014 WL 4063046 (S.D. Fla. 2014) ...............................................13, 14

*Schriever v. Navient Solutions, Inc.,*
    No. 14-cv-596, 2014 WL 7273915 (M.D. Fla. Dec. 19, 2014)..........................................1

*Segal v. Amazon.com,*
    763 F. Supp. 2d 1367 (S.D. Fla. 2011) .............................................................................9

*Starke v. Gilt Groupe, Inc.,*
    No. 13 Civ. 5495, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014).......................................10

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.,*
    599 U.S. 662 (2010).........................................................................................................14

*Swift v. Zynga Game Network, Inc.,*
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .............................................................................11

*Zaltz v. JDATE,*
    952 F. Supp. 2d 439 (E.D.N.Y. 2013) .............................................................................11

STATUTES

9 U.S.C. § 1 *et seq.*................................................................................................... passim

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(b)(1)..............................................................................................1

Fed. R. Civ. P. 12(b)(6) .............................................................................................1

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), and Rule 12(b) of the Federal Rules of Civil Procedure, Uber Technologies, Inc. ("Uber") moves for an Order dismissing the putative class action claims of Plaintiffs Jacqueline Borja ("Borja") and Ariana Levitt ("Levitt") (collectively with Uber, the "Parties") in favor of arbitration proceedings on an individual basis, or, in the alternative, staying those claims pending the completion of individual arbitration proceedings.[1]

## I.   <u>INTRODUCTION</u>

Plaintiffs Borja and Levitt are registered users of Uber's software application (the "Uber App").  Along with various other disparate plaintiffs, Borja and Levitt have purported to bring a putative class action against Uber, complaining about Uber's alleged "pricing tactics" and the lawfulness of its services under the Miami-Dade County Code of Ordinances (the "Code").

But Borja and Levitt are in violation of their very contractual agreements with Uber.  As a precondition to using the Uber App, Borja and Levitt agreed to specific Terms and Conditions ("User Agreement").[2]  The User Agreement contains a clear and conspicuous mandatory arbitration provision, which broadly covers any "dispute, claim or controversy arising out of or relating to" the use of Uber's services or the User App.  The mandatory arbitration provision also expressly waives the right of any user to pursue or participate in the very type of class action that Borja and Levitt now assert.  As required by the Federal Arbitration Act ("FAA"), Borja and

---

[1]      Uber has moved to dismiss all Plaintiffs' claims under Rule 12(b)(6) and Rule 12(b)(1).  (ECF No. 23.)  If the Court grants that motion, it need not reach the merits of this motion.  *See, e.g., Dockeray v. Carnival Corp.*, 724 F. Supp. 2d 1216, 1222–23 (S.D. Fla. 2010) (motion to dismiss for failure to state a claim does not waive right to compel arbitration).

[2]      The Court may consider the User Agreement and attached declarations in ruling on this motion. *See, e.g., Schriever v. Navient Solutions, Inc.,* No. 14-cv-596, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014); *Espinosa v. Rick's Cabaret Int'l, Inc.,* No. 13–cv–24565, 2014 WL 5454827, at *1 (S.D. Fla. April 17, 2014); *Perera v. H & R Block E. Enter., Inc.*, 914 F. Supp. 2d 1284, 1289 (S.D. Fla. 2012).

Levitt should be compelled to comply with their contractual obligations and to arbitrate their claims on a non-class, non-representative, and non-consolidated basis for several reasons.

First, there can be no dispute that Borja and Levitt agreed to the arbitration provision in the User Agreement.  They both allege that they "utilized the services" of Uber.  To do so, they registered a user account with Uber.  Before completing the registration process, Borja and Levitt were directed to Uber's User Agreement and were informed in a clear and unmistakable manner that "By creating an Uber account, you agree to the Terms & Conditions" of the User Agreement. Plaintiffs went ahead and created their accounts.  Thus, under Florida law and well-settled authority from across the country, they assented to the User Agreement.

In addition, Borja's and Levitt's claims fall squarely within the arbitration provision, which, subject to two narrow and inapplicable exceptions, applies to any claims "arising out of or relating to" Uber's "application" or the "services" it provides.  Borja and Levitt assert two claims that challenge the lawfulness of the "services" that Plaintiffs claim Uber offers under Chapter 31 of the Code.  Therefore, all claims fall within the arbitration provision that Borja and Levitt agreed to and must be arbitrated.

Lastly, the User Agreement provides that disputes must be arbitrated "on an individual basis" and may not proceed on a class-wide basis.  Both the Supreme Court and the Eleventh Circuit have repeatedly enforced similar arbitration agreements with class action waivers. *See, e.g*., *American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011); *Pendergast v. Sprint Nextel Corp.,* 691 F.3d 1224 (11th Cir. 2012); *Cruz v. Cingular Wireless*, 648 F.3d 1205 (11th Cir. 2011).  Borja and Levitt are therefore contractually barred from pursuing their putative class claims against Uber.

Put simply, consistent with the parties' broad arbitration agreement and the mandate of *Concepcion*, *Italian Colors*, *Pendergast, Cruz*, and other controlling authority, the Court should dismiss the claims of Borja and Levitt in favor of mandatory arbitration on an individual basis.

## II.   FACTUAL BACKGROUND

### A.   Uber Users Agree To The Terms And Conditions In The Uber User Agreement.

Uber is a technology company that offers an application that enables riders who want transportation services to send requests to drivers who can provide those services.  (Declaration of Paul Holden ("Holden Decl."), attached hereto as Ex. 1, at ¶ 3.)  Plaintiffs Borja and Levitt are riders who utilized Uber's App.  (Pls. Sec. Am. Compl. ("SAC"), ECF No. 1, at ¶¶ 6–7.)

Using the Uber App, riders can request transportation services from their smartphones (such as iPhones), and these requests are then transmitted to independent transportation providers in the area who are available to receive requests.  (Holden Decl., Ex. 1, at ¶ 3; SAC ¶ 14.)  But before riders can request transportation services via the Uber App, they must first register by creating an Uber account.  (Holden Decl., Ex. 1, at ¶¶ 5-10.)  Uber's records confirm that Borja and Levitt both registered on iPhones in the Uber App.  (*Id.* at ¶¶ 5, 8.)  Borja registered on July 25, 2014 and Levitt registered on October 31, 2014.  (*Id.*)

To create an Uber account in the Uber App on July 25, 2014 and October 31, 2014, when Borja and Levitt respectively registered their accounts with Uber, prospective riders were required to enter information on three screens.  (*Id.* ¶ 7, 10; *see also* Screenshots attached to Holden Decl. at Exs. 1A & 1B.)  The first screen required Borja and Levitt to "Create an Account" by entering their respective email addresses and mobile phone numbers, entering a password, and then clicking "NEXT."  (*Id.*)  The second screen required Borja and Levitt to "Create a Profile" by entering their first and last names and again clicking "NEXT."  (*Id.*)  The third and final screen, titled "Link

Payment" (and shown below), required Borja and Levitt to enter payment information.  The

following notice was conspicuously displayed on the final screen with no need to scroll down to

view it:  "***By creating an Uber account, you agree to the Terms & Conditions and Privacy***

***Policy***." (*Id.*)  The words "Terms & Conditions" (*i.e.*, the User Agreement) and "Privacy Policy"

are displayed in bold text in a clickable rectangular box.  (*Id.*)  By clicking on the rectangular box,

the user is taken to a screen where she can click buttons to view the User Agreement and the

Privacy Policy.  (*Id.*)



(Holden Decl., Exs. 1A & 1B.)

Exhibits 1A and 1B are screenshots reflecting the process that Borja and Levitt respectively went through to create an account. Each step was contained on a single screen on their smartphone, with no scrolling required. By creating their respective Uber accounts, Borja and Levitt therefore agreed to the User Agreement, including its arbitration requirement and class-action waiver.

**B.      The User Agreement Requires The Arbitration Of All Disputes On An Individual Basis.**

The User Agreement (in effect when Borja and Levitt created an Uber account) contains several sections. The first section provides that the User Agreement creates a contractual relationship between the registrant and Uber. (User Agreement, attached as Ex. 2A to Declaration of R. Michael Cianfrani ("Cianfrani Decl."), at 1.) It makes clear that "[i]n order to use the Service . . . and the associated Application . . . , you must agree to the terms and conditions that are set out below." (*Id.*) The user also agrees that Uber "DOES NOT PROVIDE TRANSPORTATION SERVICES, AND THE COMPANY IS NOT A TRANSPORTATION CARRIER." (*Id.*)

The User Agreement contains a section that is conspicuously labeled "Dispute Resolution," and provides for mandatory "binding arbitration" on an individual, non-class, and non-representative basis:

> You and Company agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, "**Disputes**") will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court and the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights. **You acknowledge and agree that you and Company are each waiving the right to a trial by jury or to participate as a plaintiff or class User in any purported class action or representative proceeding.** Further, unless both you and Company otherwise agree in writing, the arbitrator may not consolidate more

-5-

> than one person's claims, and may not otherwise preside over any form of any
> class or representative proceeding.

(*Id.* at 7–8 (emphasis in original).)  The term "Service" is defined to include any "services supplied by" Uber.  (*Id.* at 1.)

The terms of the arbitration provision heavily favor the user.  It permits the user to arbitrate the dispute in the county where he or she resides.  (*Id.* at 8 ("Unless you and Company otherwise agree, the arbitration will be conducted in the county where you reside.").)  It allows for recovery of attorneys' fees only by the user, not Uber.  (*Id*. ("Arbitrator's Decision")).  In addition, for any non-frivolous claim that seeks less than \$75,000 in damages, Uber agrees to bear the burden of payment of the filing, administrative, and arbitrator fees.  (*Id*. ("Fees")).

The User Agreement makes clear that "[t]he Federal Arbitration Act will govern the interpretation and enforcement" of the arbitration provision.  (*Id.* at 8.)  It also specifies that the American Arbitration Association ("AAA") will oversee any dispute, and identifies the particular arbitration rules that will govern.  (*Id*.)

Thus, subject to two narrow and inapplicable exceptions,[3] the User Agreement requires individual non-class arbitration of any claims relating to the Uber App or to any services provided through the User App, and offers numerous incentives for and protections to the user during the arbitration process.

### C.      Plaintiffs Borja And Levitt Filed This Action And, In So Doing, Ignored Their Agreements To Arbitrate Their Disputes With Uber.

The arbitration provision in the User Agreement requires Levitt and Borja to arbitrate all disputes pertaining to the Uber App.  Despite this provision, Levitt and Borja filed this lawsuit

with six other non-user plaintiffs, most of whom are taxi drivers, contending that the operation of Uber's App in Miami-Dade County violates Chapter 31 of the County Code.  (SAC ¶¶ 6–13, 17–19.)

Borja and Levitt assert two counts against Uber:  (a) a claim for "Injunctive Relief," which seeks to enjoin Uber from operating without compliance with Chapter 31 (*id.* ¶¶ 36-46); and (b) a claim for declaratory judgment, which seeks a declaration that Uber is a "passenger service company" within the meaning of Chapter 31, but has failed to comply with Chapter 31 (*id.* ¶¶ 58–67.)  Even though users of the Uber App are contractually bound to arbitrate any claims and have expressly waived the right to pursue a class action, Plaintiffs purport to bring this action on behalf of themselves and all "individuals and members of the public who presently or in the future will utilize for-hire transportation services in Miami-Dade County to meet transportation needs[.]"  (*Id.* ¶ 16(a).)[4]

## III.    THE CLAIMS OF PLAINTIFFS BORJA AND LEVITT SHOULD BE DISMISSED OR STAYED IN FAVOR OF ARBITRATION.

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000).  The FAA expresses a strong preference in favor of arbitration to resolve disputes and requires that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *accord Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)

---

[3]     As quoted above, these exceptions are an individual action brought in "small claims court" and an action for injunctive or equitable relief concerning certain intellectual property rights.  (User Agreement, Ex. 2A, at 8.)

[4]     Uber's counsel contacted Plaintiffs' counsel, explained the mandatory arbitration provision, and informed Plaintiffs' counsel that Uber was electing to arbitrate the claims brought by Borja and Levitt on an individual basis.  Plaintiffs' counsel has refused to agree to arbitration on an individual basis.

("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with other contracts."); *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d 1396, 1399 (S.D.Fla. 2014) (Scola, J.); *Bolamos v. Globe Airport Security Servs., Inc.*, No. 02-211005, 2002 WL 1839210, at *1 (S.D. Fla. May 21, 2002).  Under this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983); *Picard v. Credit Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal policy in favor of arbitration [citations omitted] and 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration'") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

Here, pursuant to these well-settled principles, it is clear that:  (a) the FAA applies to the arbitration provision in the User Agreement; (b) Borja and Levitt assented to the User Agreement; (c) Borja's and Levitt's claims fall within the scope of the arbitration provision in the User Agreement; and (d) consistent with controlling law and the User Agreement, Borja and Levitt only may pursue their claims in arbitration on an individual basis and may not pursue class-wide claims or relief.  Accordingly, their claims should be dismissed.

A.       **The Federal Arbitration Act Applies.**

The FAA applies to arbitration agreements in any contract evidencing a transaction involving interstate commerce.  *See, e.g., Picard*, 564 F.3d at 1252-53.  Borja's and Levitt's claims in this case fall squarely within the FAA.  They are citizens of Florida (SAC ¶¶ 6-7), while Uber is a Delaware technology company with its principal place of business in California. (*Id.* ¶ 14.)  The Uber App uses the internet to transmit user requests across a network of independent drivers.  Moreover, the arbitration provision in the User Agreement expressly states

that the "Federal Arbitration Act will govern the interpretation and enforcement of this

Section." (User Agreement, Ex. 2A, at 8.); *see also Buckeye Check Cashing*, *Inc. v. Cardegna*,

546 U.S. 440, 442-43 (2006) (finding FAA preempted state law where arbitration agreement

expressly provided that the FAA would govern).

 Because the User Agreement was entered into between citizens of different states, covers

the use of an internet application that impacts interstate commerce, and expressly designates the

FAA as the applicable law, the FAA—and its presumption in favor of arbitration—

unquestionably applies here.

  **B.**  **Borja's and Levitt's Arbitration Agreements Are Enforceable Here.**

 The Eleventh Circuit has made clear that "a district court must compel arbitration if the

parties have agreed to arbitrate their dispute." *Chastain v. Robinson–Humphrey Co.*, 957 F.2d

851, 853–54 (11th Cir. 1992) (citing 9 U.S.C. §§ 2 & 3); *Lambert v. Austin Ind.*, 544 F.3d 1192,

1195 (11th Cir. 2008).  Under Florida law, a signature is not necessarily required to enforce an

arbitration agreement. *Fi–Evergreen Woods, LLC v. Robinson*, 135 So. 3d 331, 335 (5th DCA

2013) ("A failure to sign an arbitration agreement does not automatically render the agreement

invalid.").  Instead, "the courts look to a party's words and conduct to determine whether the

party assented to the agreement." *Id.* at 336; *see also H.W. Gay Enter., Inc. v. John Hall Elec.

Contracting, Inc.*, 792 So.2d 580, 581 (Fla. 4th DCA 2001) (finding that plaintiff assented to an

arbitration agreement that only defendant signed).[5]

---

[5] State law governs the formation and interpretation of written arbitration agreements, and federal law provides the substantive law controlling the validity and enforcement of such agreements. *See, e.g., Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). Plaintiffs are Florida citizens, registered for use of the Uber App in Florida, and used the Uber App in Florida.  Thus, Florida law applies to whether there is an agreement to arbitrate.

Under Florida law, arbitration agreements based on an internet user's consent by a click of a mouse are enforceable, just like any other contract. *See, e.g.*, *Segal v. Amazon.com*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011); *Salco Distributors, LLC v. iCode, Inc.*, No. 8:05 CV 642 T 27TGW, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006).  Applying this principle, courts in this Circuit—and across the country—have held that a user of an internet service is bound by an arbitration agreement that is made available through a webpage, when the user is put on notice that the terms will bind him or her if they proceed to register for the service or complete the transaction. *Id.*; *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014) (collecting cases where courts regularly enforce contract terms contained in a hyperlink if users have actual, constructive, or inquiry notice of those terms, and noting that constructive or inquiry notice is often found where the hyperlink to the terms is conspicuous and users have to complete another step such as hitting "Done" or "Sign Up" after being presented with the terms but before using the service); *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513, 2015 WL 500180, at *5 (E.D.N.Y. Feb. 4, 2015) (compelling arbitration and holding that online Amazon customer who placed order was bound by contract terms when website stated that, "By placing your order, you agree to Amazon.com's privacy, notice and conditions of use," which were reachable by a hyperlink on the same webpage); *Crawford v. Beachbody, LLC*, No. 14CV1583-GPC (KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (online customer who placed order was bound by contract terms when website stated that "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions," which were at a hyperlink on the same webpage); *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5495, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (dismissing claims in favor of arbitration because user who provided an email address and clicked "Shop Now" above language that said "you agree to

-10-

the Terms of Membership for all Gilt Groupe sites" assented to an arbitration provision contained in the hyperlinked Terms of Use); *5381 Partners LLC v. Shareasale.com, Inc.*, No. 12cv426, 2013 WL 5328324, at *4 (E.D.N.Y. Sept. 23, 2013) (granting motion to transfer in part because online purchaser who activated account was bound by contract when website stated that "by clicking and making a request to Activate, you agree to the terms and conditions in the Merchant Agreement," and a hyperlink to the terms and conditions was available on the same page); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) (enforcing forum selection clause in "Terms and Conditions" accessible through a hyperlink because "plaintiff was shown precisely where to access the Terms and Conditions of Service before she agreed to them, and should have clicked on them in the same way that one is expected to turn over a ticket to learn of its terms"); *Fteja v. Facebook, Inc.,* 841 F. Supp. 2d 829, 837-38 (S.D.N.Y. 2012) (enforcing hybrid clickwrap-browsewrap agreement against Facebook account holder, where plaintiff indicated assent to terms of use by clicking "sign up," but terms of use were hyperlinked); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911 (N.D. Cal. 2011) (videogame user bound by Zynga's online terms and conditions because she was told that, "By using YoVille, you also agree to the YoVille [hyperlink] Terms of Service" and the user proceeded); *Brueggemann v. NCOA Select, Inc.*, No. 08-80606-CIV, 2009 WL 1873651, at *2 (S.D. Fla. June 30, 2009) (arbitration ordered where plaintiff, when purchasing product on defendant's website, was informed that "[e]ntering this Site will constitute your acceptance of these terms and conditions," which contained arbitration agreement); *Cairo, Inc. v. Crossmedia Servs., Inc.*, C 04-04825 JW, 2005 WL 756610, at *2-3 (N.D. Cal. Apr. 1, 2005) (granting motion to dismiss for improper venue and enforcing forum selection clause in website's terms of use where website expressly

stated: "By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site . . . .").[6]

Here, Borja and Levitt clearly had the requisite notice of the User Agreement and the requirement to arbitrate—and consented to those terms. The process that Borja and Levitt went through to register for Uber through the Uber App was simple. (Holden Decl., Ex. 1, at ¶¶ 5–10; *id.* at Exs. 1A & 1B.) Plaintiffs Borja and Levitt entered information in three screens. They first entered password and other basic information for their account. (*Id.*) They then created a profile. (*Id.*) On the third and final screen, which requested payment information, the following conspicuous notice was displayed with no need to scroll down to view it: "***By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy***." (*Id.* (emphasis added).) The "Uber Terms & Conditions" (*i.e.*, the User Agreement) and "Privacy Policy" were made available to Borja and Levitt by clicking on a large rectangular box that states "Terms & Conditions and Privacy Policy." (*Id.*) Thus, Borja and Levitt completed the registration process and created their Uber accounts with full knowledge that they were agreeing to the User Agreement, including the requirement to arbitrate on an individual non-class basis.[7]

---

[6]     In *IT Strategies Group, Inc. v. The Allday Consulting Group, L.L.C.*, 975 F. Supp. 2d 1267 (S.D. Fla. 2013), this Court recognized the rule that a user of a website is bound by and assents to terms and conditions to which she has "'actual or constructive knowledge.'" *Id.* at 1280 (internal citations omitted). However, in that case, the Court held that the plaintiff failed to demonstrate that a company that downloaded the plaintiff's internet software was bound to the online user agreement because the plaintiff did not show that the agreement existed on the website, much less that the company had constructive knowledge of the user agreement. *Id.* at 1281-82. As demonstrated throughout this brief, that is clearly not the case here.

[7]     Moreover, to the extent Borja and Levitt might challenge the enforceability of the User Agreement, that issue must first be addressed by an arbitrator. As the Supreme Court has squarely held, challenges "to the validity of the contract as a whole . . . must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 449 (2006) ("an arbitration provision is severable from the remainder of the contract [and] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"); *see also Rent-A-Center, W., Inc.*

-12-

### C.     Borja's And Levitt's Claims All Fall Within The Broad Scope Of The Arbitration Agreement.

So long as the dispute "touch[es]" on a matter covered by the arbitration clause, it must be arbitrated.  *In re Managed Care Litig*., No. 00-MD-1334, 2003 WL 22410373, at *3 (S.D. Fla. Sept. 15, 2003) ("If Providers' allegations 'touch matters' covered by the relevant arbitration agreements, then those claims must be arbitrated, irrespective of how the allegations are labeled"); *see also Mitsubishi Motors Corp.,* 473 U.S. at 625 n. 13 ("insofar as the allegations underlying the statutory claims touch matters covered by the enumerated articles, the Court of Appeals properly resolved any doubts in favor of arbitrability") (internal quotation marks omitted).  In fact, a dispute must be arbitrated unless there is "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commn's Workers of Am*., 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrier & Gold Navigation Co*., 363 U.S. 574, 582-83 (1960)).

In making this determination, the Supreme Court, the Eleventh Circuit, and this Court have made clear that "arbitration clauses" must be construed "generously, ***resolving all doubt in favor of arbitration***[.]"  *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-20468-CIV, 2014 WL 4063046, at *4 (S.D. Fla. 2014) (internal citations and quotations omitted)); *see also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626 (1985) ("'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration'" (internal citations omitted)); *Ruby-Collins, Inc. v. City of Huntsville,* 748 F.2d 573, 576 (11th Cir. 1984)

---

*v. Jackson*, 561 U.S. 63, 70-71 (2010) ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 610 (2d Cir. 1969) ("The Arbitration Act contemplates a distinction between the entire contract between the parties and the arbitration clause.")).

("arbitration clauses are to be generously construed and all doubts are to be resolved in favor of arbitration"); *Gunson v. BMO Harris Bank, N.A.*, 43 F. Supp. 3d at 1399 (same).

Here, the scope of the arbitration provision at issue is broad. The arbitration provision in the User Agreement provides that "[y]ou agree that any dispute, claim or controversy ***arising out of or relating to*** this Agreement or the breach, termination, enforcement, interpretation or validity thereof *or* the use of the Services . . . will be settled by binding arbitration," with two limited exceptions that are inapplicable here. (User Agreement, Ex. 2A, at 8 (emphasis added)). Plaintiffs Borja and Levitt assert "claims" for injunctive and declaratory relief against Uber, based upon rates allegedly charged to them by Uber and whether Uber is in compliance with Chapter 31. These "claims" clearly arise out of and relate to Borja's and Levitt's "use" of Uber's services and the Uber App. The arbitration requirement in the User Agreement, therefore, covers these claims. *See, e.g., Sanchez,* 2014 WL 4063046, at *4 (dismissing case and requiring arbitration of all claims on individual basis because claims fell within "broad" arbitration provision); *24 Go Wireless, Inc. v. AT&T Mobility II, LLC,* No. 11-20930-CIV, 2011 WL 2607099, at *3 (S.D. Fla. June 30, 2011) (same).

**D.    The Arbitration Provision Mandates Individual, Non-Class Arbitration Of Plaintiff Borja's and Levitt's Claims.**

It is well-settled that the Court must enforce the parties' arbitration agreement as written, including its clear mandate that the arbitration proceed on an individual and non-class basis. *See, e.g., Concepcion*, 131 S. Ct. at 1748; *accord Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 599 U.S. 662, 683 (2010). In *Concepcion,* for instance, the Supreme Court held that the FAA preempted a state rule that precluded enforcement of class action waivers in arbitration agreements. 131 S. Ct. at 1748, 1753. The Supreme Court reasoned that such a rule "'stands as

-14-

an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" in establishing the FAA, *id.* (internal citations omitted), including respecting the parties' expectations and their contractual right to agree to the terms under which arbitration will take place. *Id.* at 1752–53. The Supreme Court further reasoned that "[r]equiring the availability of classwide arbitration," contrary to the parties' contractual agreement, "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748.[8]

Even more recently, the Supreme Court in *Italian Colors* overturned a Second Circuit rule that allowed courts to reject class action waivers in arbitration agreements for federal statutory claims if the plaintiff would incur prohibitive costs to arbitrate an individual case. *Italian Colors*, 133 S. Ct. at 2312. Because the "principal purpose" of the FAA "is the enforcement of arbitration agreements according to their terms," the Supreme Court held that the "FAA does not sanction" any such basis for refusing to enforce the arbitration agreement's class action waiver. *Id.* Indeed, refusing to enforce a class action waiver would improperly "destroy" the parties' agreement for the "speedy resolution that . . . bilateral arbitration in particular was meant to secure." *Id.*

Consistent with *Concepcion* and *Italian Colors*, the Eleventh Circuit has consistently rejected challenges to class action waiver provisions in arbitration agreements. *See Pendergast,* 691 F.3d at 1236 (affirming order dismissing action in favor of individual arbitration because "[u]nder *Concepcion*, both the class action waiver and the arbitration clause must be enforced

---

[8]       The Supreme Court also stressed that "[a]rbitration is poorly suited to the higher stakes of class litigation." *Id.* at 1752. Indeed, "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1751.

according to their terms."); *Cruz,* 648 F.3d at 1212-16 (affirming order compelling arbitration on an individual basis and rejecting the argument that a class action waiver is unenforceable as contrary to public policy); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378-79 (11th Cir. 2005) (affirming grant of motion to compel arbitration where arbitration agreement prohibited class claims).

Here, the Arbitration Agreement clearly and unambiguously states that claims will be arbitrated on an individual basis and, further, that there is no right to "participate as a plaintiff or class User in any purported class action or representative proceeding" and that "the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding." (User Agreement, Ex. 2A, at 8). Uber has elected to proceed with arbitration on an individual basis. Because the arbitration provision requires arbitration of all of Plaintiff Borja's and Levitt's claims, but prohibits arbitration of those claims on a class-action or representative basis, this Court should compel arbitration of their claims on an individual, non-class basis.

## IV. CONCLUSION

For all of these reasons, the Court should dismiss Plaintiff Borja's and Levitt's claims pending arbitration of the claims on an individual, non-class basis. In the alternative, the Court should stay the claims pending individual arbitration.

## CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(a)(3)

Pursuant to S.D. Fla. L.R. 7.1(a)(3), the counsel for Uber contacted Plaintiffs' counsel regarding the relief requested in this Motion, and, to date, Plaintiffs Borja and Levitt have not agreed to arbitrate their claims on an individual basis in accordance with the User Agreement.

Dated:  April 1, 2015                    Respectfully submitted,

                                         /s/ Brian M. Ercole
                                         Robert M. Brochin
                                         Florida Bar No. 319661
                                         rbrochin@morganlewis.com
                                         Brian M. Ercole
                                         Florida Bar No. 0102189
                                         bercole@morganlewis.com
                                         Morgan Lewis & Bockius LLP
                                         200 South Biscayne Boulevard – Suite 5300
                                         Miami, Florida 33131-2339
                                         Telephone:      305.415.3000
                                         Facsimile:      305.415.3001

                                         *Counsel for Defendant Uber Technologies, Inc.*

**<u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>**

I hereby certify that on April 1, 2015, I electronically filed the foregoing Defendants'

Corrected Motion To Dismiss, Or In The Alternative, To Stay The Action In Favor Of Individual

Arbitration And Incorporated Memorandum Of Law on all counsel of record via the CM/ECF

system.

<u>/s/ Brian M. Ercole</u>
Brian M. Ercole
